Arguments not to exceed 15 minutes per side. Mr. Middlestadt for the appellant. Mr. Middlestadt, you may proceed. We know you have three minutes for rebuttal. Thank you, Judge. Mike Middlestadt on behalf of the appellant Martez Bickham. This is, as you know, a habeas case. And I think the central issue is whether there was a procedural default. So I'll dive right into those facts and explain to you why there was not a procedural default in this case. I think Michigan's contemporary objection, contemporaneous objection rules were complied with both in law and in fact. And I think the federal contemporaneous objection rules were complied with both in law. The federal rules are irrelevant, but Michigan's rule they held was not complied with. Correct? Why shouldn't we defer to their ruling of their own law? Every circuit that's looked at it says you do. Well, actually, I think whether there's been procedural default is a federal question that's reviewed de novo by the habeas court, by the reviewing court. So you, the federal court, has to look into beyond the mere assertion of a procedural default to make sure that it's not abused, to make sure it's not arbitrary. Well, we look to see if it's firmly established and regularly followed, right? Not in terms of procedural default question. I understand the procedural default we look at, that's our own call. But they said their own state rule was not followed, which is a contemporaneous objection at the time that the people did not come in when seats were vacant. They put the onus in Michigan on the lawyer, not the judge. And the lawyer didn't raise, I know he raised an initial objection, and the judge said, Yep, when seats open up, the public's welcome to come in. Seats opened up, defendant doesn't renew his objection. Michigan says, we have a contemporaneous objection rule, you had to object at that time, you didn't, you didn't put the district judge on notice, there were seats open, or the trial judge, I'm sorry. So you waived the right to proceed on this claim. That's a question for this court to decide on procedural bar. Because you have to decide whether there was a firmly established and regularly followed procedure that was not complied with. But there's Michigan appellate courts that say you have to have a contemporaneous objection. And there was. Our contention that there was, he objected, he invoked Presley, and that has connotations, because Presley says that the judge has to be proactive, that there's a presumption of openness, that the judge can't close the courtroom, the judge can't have this procedure. The judge didn't close the courtroom here. He said, or she, I'm sorry if I don't know, the judge said, I'm going to have it open as soon as there's seats open, which makes perfect sense during court here, right? You and I have both been in small courtrooms where you try to fit the, got to put the panel in first. The problem is, is that the courtroom wasn't opened back up. In fact, two spectators, including the defendant's brother, asked to come in and the guards would not let him. And that was pursuant to a policy, not pursuant to any case-specific or fact inquiry by the judge. At that point, defense counsel should have said, Judge, you've already said we can have the public in here. There's two seats. I object. And she would have granted it right then, right? And he knew who the parties were that were related to his client. And she did. I don't think the record supports that he knew who the parties were. And it wasn't just his family's right to be there. It was the public's right. Wait, the defendant didn't know who the parties were? Defense counsel. Defense counsel. I'm not sure defense counsel could be counted on to know. He knew much better than the judge who doesn't know who any of the prospective jurors are. Right? I've been there. I've sat there. You don't know who's in the courtroom. Of course. And someone's got to tell you because you're focused on Vordeer. Okay. But this was, this closure occurred. See, Presley says that you have to have a presumption of openness and that if there's a room, if there's a space limitation, you say, hold on, time out, let's see if we can make accommodations. Okay, so you're blending the two issues. I totally agree with you on Presley. Okay. Presley, there's a presumption of openness. The court, she says, we're going to have it open. And let's call the Vordeer in. If there's any empty seats, anyone can come in. You have to go outside right now. That didn't happen. There were empty seats. The guards turned two people away. They put a sign that unequivocally said, don't come in, do not enter. Didn't say, ask the judge. And that's when the Michigan Supreme Court says, counsel should object. And say, judge, go ahead. I'm sorry. No, no. But my point is, you're mixing apples and oranges. Presley's a constitutional case. What's the constitutional obligation? What Michigan's talking about is their contemporaneous objection rule. I'm still on the procedural default side of this, not the merits. Michigan says procedural default, or you waived this because you didn't contemporaneously object at the time that there were open seats. This court has to conduct a de novo review of whether that's an adequate and independent grounds. Whether it was complied with in fact and in law, and it was. Because under Michigan law, if you receive affirmative assurances from a judge that your concerns are going to be addressed, your concerns are not going to be, the alleged violation is not going to occur, you can assume that that's going to happen. What case do you have for that? That's the Hernandez case that we cited in a brief. There was a case where there was a motion in limine before trial, the judge granted the motion in limine, and the witness unexpectedly at trial boarded out something about the evidence that was excluded, and the Supreme Court said, well, given the realities of trial, he couldn't contemporaneously object, and he did it later at a sidebar, and they said, well, that was entirely excusable under the circumstances. Right, but you're talking about evidence, right? Yes. Yes, you're talking about something that the trial judge would know about. Right. Which is different in this case. There's no evidence the trial judge knew anyone was excluded. But the trial judge, I'm sorry, isn't it the case, first of all, the trial judge is in the front of the courtroom, as we know, and sort of sees what seats are and are not available. Counsel is facing the jury. But the other point is that is there any evidence that the attorney knew that there was a sign outside? No. No, there was not. The courtroom door, there's an internal door, there's like a breezeway. There's an internal door and an external door, and the sign was put on the external door. In fact, a year and a half later, that sign was still there during broad years. So this is not just a case-specific inquiry. This is a policy that's been followed by this judge ongoing. So there's no evidence that this attorney knew. In fact, he was entitled to rely on the judge's assurances that the courtroom would be reopened. In fact, he was too. And I think I understand your argument. You're entitled, right, to rely upon it. But if they're in the same position, the judge doesn't know that someone's trying to get in that hasn't gotten in. And the attorney doesn't. The Michigan law puts the onus on the attorney to object. In other words, I want someone in this courtroom. They're not there. There's an empty seat, judge. That's what their contemporaneous objection is. That has been around since 1979. Why don't we have to then, according to every circuit in the country, defer to them on that if we see it in their law, and if they enforce it, we defer? Well, first of all, the contemporary objection rule was not in place with regard to the courtroom. In fact, the only published opinion on the case was in 1923, which is the McCauley case, which I cited in my brief, which reversed a conviction based on a closed courtroom in Wayne County Circuit Court, I might add, where there was a policy and practice of closing the courtroom. Weren't Smith and Gratton both jury cases? Those were Court of Appeals opinions, and under Michigan jurisprudence, the Court of Appeals cannot overrule the Supreme Court. The Supreme Court decision stays in effect until it's specifically overruled. Wait, I'm sorry. What was the Supreme Court case saying? The Michelisi case overturned a conviction based on a closed courtroom issue, and the court ruled that a post-trial motion was sufficient to preserve the issue for appellate review. It was brought to the trial judge's attention after the fact, which is what occurred here, and the Michelisi court held in 1923 that that was sufficient to preserve the closed courtroom issue. That was before Presley came out. That was way before Presley. In fact, it wasn't until long after Presley and after trial, in this case, that the Supreme Court in Michigan actually said for the first time, we've never fully addressed whether you can forfeit under Olano and under Michigan's version of Olano, and we're holding for the very first time that you even have to make an objection. So I think that— I've hung you up on procedural default for a long time. You want to move to the merits? Well, I don't think there's anything to talk about. I think once we get to the merits, we win. What about deference? There is no deference because it's entirely— number one, it's de novo because there was no procedural default. It's not an adequate independent grounds for— Didn't they analyze it under plain error? They analyzed it under plain error, but they got a— And under our precedent, Stuart, our recent precedent, and then Fleming, et cetera, plain error is a reasoned decision on the merits that's entitled to put deference. Well, the only thing really that they analyzed under plain error, at least on the Presley issue, was whether the fourth prong of Olano, whether there was an impact on the integrity of the system. But that's sufficient, right? At post-Harrington v. Richter, that seems— I mean, we've held that as long as they do the analysis, even if they just said we analyzed it under plain error affirmed, that's sufficient for ADPA deference. The problem is Waller doesn't let you do that. That's contrary to Waller. You still have to decide whether it was contrary to or an unreasonable application of federal Supreme Court precedent. Yeah, that's ADPA deference. No, no, you still apply the deference. And going into a harm analysis, which they did in this case, is contrary to Presley. Presley doesn't allow that. Presley says it's structural error. Weaver says— You're saying even under—and I'm sorry to rephrase your argument, but even under ADPA deference, you win. Yeah, because what they did was they never really got into the merits of whether this was a justified closing, and they couldn't because Presley was so blatantly violated in this case. It was a policy. There was no fact-specific inquiry. There was no accommodations made. There was no indication that it was any narrower than necessary to fulfill the requirements of Presley. So what they did was then they went to harm, and Presley says you don't get into harm. Weaver says you don't get into harm because it's a structural issue. What they did say, though, is that this was a partial closure, and under no interpretation, either state or federal, was this a partial courtroom closure. The state didn't even argue that it was partial. They don't argue now that it was partial. Everyone was excluded from this courtroom during all of Wadeer. Partial courtroom closures occur. Remind me, and I'm sorry I've read a bunch of cases. Is this the case where someone said, or is that different, where we allowed the jury and the jury's part of the public, so it's a partial closure? Well, that's what the Michigan Supreme Court in Vaughn talked about in terms of its fourth prong of Olano, basically, what Michigan's version of Olano is. Like I said, Presley doesn't allow you even to get into that inquiry because it's structural. Well, I mean, that seems wrong to me anyway. Yeah, yeah, and I don't think we need to address that. But they can say it as it regards to Michigan law, but as to federal law, okay. So I just want to go back to procedural default one more time because it seems like, and I struggled with this a little bit too, there's a blurring of the line between epidefference and whether there's a procedural default. This court has a duty to de novo review whether there's a procedural default. And that requires them to look at, you to look at, whether there was an adequate and timely objection under the principles, under the guiding principles of what federal jurisprudence says is enough and under the state rules. The state rules in Michigan weren't- Counsel, your time is up. Do you want to- Yeah, I just want to say the state rules in effect at the time were not firmly established and regularly followed. There's an agreement from the state that counsel relied on the judge's insurances. Given the realities of trial, counsel can turn to picking a jury in a capital murder case. Thank you, counsel. Good morning. May it please the court, Bruce Edwards, Michigan Assistant Attorney General on behalf of the warden. Mr. Bickham was convicted of second degree murder after a seven-day jury trial. There's only one issue, and the state is arguing procedural default existed here. As has already been discussed, the Michigan Court of Appeals found that there was not a contemporaneous objection. What happened in this case is you had an objection- How do you deal with the cases that your opponent cites, Hernandez and Mikkelsee? Yes, it's interesting that neither one of those cases was cited by Mr. Bickham in the state court. I checked. So he didn't even ever tell the Michigan courts, oh, what happened here is contrary to your own rulings. That's okay. They need to know their own law. Oh, but it's got to be brought to their attention, especially if you have subsequent Michigan Court of Appeal opinions that theoretically say something different with reference to the Mikkelsee. And Mikkelsee is 1923 discussing the Michigan Constitution. The Sixth Amendment hadn't even been incorporated applicable to the states at that time, and this is a Sixth Amendment claim. And Hernandez, the prosecutor in the Michigan Court of Appeals, cited another case that you can sort of read the other way. And Hernandez is also distinguishable, like you said, because it's evidence, and here the judge doesn't know who the defendant's brother and mother are. In our case involving the Constitution, did we follow the state court rule about this issue here, whether they raised a contemporaneous objection or not? What do we do on that? One is constitutional, and one is just state procedure. Well, even the United States Supreme Court requires contemporaneous objections. They have denied relief in public trial cases where there was no contemporaneous objection. I cited Levine, Singer, and Peretz, and all three of them say that if you don't raise it in a proper time period, it's lost or forfeited. But counsel, I don't understand your argument. I mean, counsel raised the issue, clearly. When the court excluded the public, counsel raised the issue, and the court answered, we're only doing this for space right now. I fully understand Presley and your argument, and I will not exclude the public. That's what the judge says. So he proceeds. He has to, I mean, why, how can you say that was not a contemporaneous objection? Because the objection was sustained. The judge said, I agree with you, counsel. I have no intention of keeping all the public out. I will let the public back in, space permitting, as soon as the veneer comes into the courtroom. This was not a ruling that the public cannot be here, no member of the public is allowed, as occurred in Waller and Presley. This is the opposite. The objection was sustained. But I think you're missing the point. The judge ruled in his favor. So the judge at that point committed to letting the public in. That's correct.  It was incumbent upon the judge at that point, having been informed and having acknowledged Presley, and having said that she will not violate Presley, it was incumbent upon the judge to tell the court officers either to let people in as the room developed or to tell them to take the sign off the door. The court officers were in the room when the judge said the public will be let back in, space permitting. The judge is not on the hook for unauthorized actions by the deputy sheriffs. He clearly said they could come back in, space permitting. And defense counsel did not speak up at the appropriate time. You cannot object when it's too late to cure the error. That's why the Michigan Court of Appeals was fully within its rights to say there wasn't a contemporaneous objection. Therefore, we review for plain error. Is something like an invited error the defense counsel? Well, he just sat on his hands. You know, I cited a case in my brief that says defense counsel has got to be on his toes. I mean, if you really want these people back in, you're the defendant or the defense attorney. It doesn't take that long for 50 people to come into a courtroom and sit down, maybe five minutes, I don't know. And then they look around, well, this bench is empty. And hey, my mother and brother didn't come back in. Hey, your honor, didn't you say? Or even, as the district judge said, the mother or brother could have said, well, we were just in there. And the judge said we could come back in if there was space permitting. Would you ask if there's space permitting? But instead, defense counsel sat on his hands almost like possibly an appellate parachute or just ignorance. We don't know which. But the Michigan Court of Appeals was justified. You know, the precise contours of the contemporary objection rule is a matter of state law. And the Michigan Court of Appeals gets the last word on that unless the Michigan Supreme Court says different. And they didn't say anything different in this case, even though there was an appeal. Are these bailiffs in the courtroom an agent of the court, an agent of the judge? They work for the court at large. And so if they do something erroneous, the judge has made an error, right, unless somebody objects to it? Well, no, the judge has not made an error because the fact that no member of the public was present during the two-hour voir dire was not because of something the judge did. Because the judge said they could come back. But it's a court policy. No, there's no record of this being a court policy. In fact, the record supports this was not a court policy. The record supports the judge said on the record, members of the public will be let back in space permitting. That's what the record shows. Now, somebody found a picture that was used, and if the bailiffs used such a picture in this trial, that would be contrary to what the judge had just said. Who do we attribute the error to? In other words, we all agree that the bailiffs should not have done what they did. Why should defense counsel have the error attributed to them? Because had he spoken up, the error could have been cured by the judge and would have been consistent with what she had said. And I cited a Tenth Circuit case in my brief where a bailiff did the same thing in the Tenth Circuit. And unbeknownst to anybody, he kept somebody out of the courtroom, and the court said, well, the judge didn't authorize this. In order to have a Sixth Amendment violation, you have to have an order from the judge. It's not enough to have a rogue bailiff. Are you seriously arguing that this was a rogue bailiff and that it was not the court's policy not to let people in during voir dire? Yes, I am, Your Honor, and I would say again, if you read the transcript, the judge said members of the public will be let back in space permitting. That is the policy of the judge from this record. And the bailiffs acted contrary to that instruction. Was there not a stipulation that that sign was there pursuant to a policy? There was a stipulation that bailiffs used such a sign in cases. But that is, in this case, we have the judge saying to the contrary that sign. The bailiffs, had they obeyed what the judge said, would not have put that sign up. And you cannot attribute to the judge, she never said, I want no member here during voir dire. She did not say that. And that's what you need to find a true Sixth Amendment public trial violation. Okay, counsel, I don't want to argue with you, but I really think that you're ignoring the stipulated facts, which is that the sign that was there, not put there by a rogue bailiff, such as the bailiff that didn't let that other person in the courtroom in the other case. It was the practice at the time to post a sign on the outer courtroom door prohibiting the public from entering. And it was also the practice to physically deny access to anyone who attempted to enter during jury selection, regardless of relationship. And defendants' brother and mother observed a sign, and the brother was told by the deputy that he could not enter. And so all of that is in the record, and it was stipulated, too. And also in the record is the judge saying, members of the public will be let back in, space permitting. And if a bailiff put up that sign after the judge said that, he was not complying with what the judge said was supposed to happen. And if defense counsel had just objected at a time, then the judge could have said, hey, yeah, you're right. Let's find out, was there somebody else that wanted to come back in? We do have a little space here. But there was no objection. If we reject your procedural default argument, do we apply ad pedeference? Absolutely, because, as you mentioned, under Fleming v. Metrish, any analysis as to the merits is given ad pedeference, even when you find plain error was not satisfied. And then why do you win under ad pedeference? And I win under ad pedeference because there was no judge-ordered complete closure of the courtroom. The judge did not say, members of the public cannot be here for voir dire. That's what happened in Presley. That's what happened in Waller. The judge specifically said, members of the public are not allowed. In this case, it's quite different. The judge said, members of the public will be let back in, space permitting. That clearly distinguishes the case from Presley and Waller. And under ADPEL, you can't expand the law. You can't enlarge it. You can't apply a broader rule than is already in existence. And I would also counter an argument that was made. Plain error review is allowed for structural errors. And that's what happened here, and there's nothing wrong with that. Further, under Ambrose v. Booker, when you have a structural error, it can be subject to plain error review, and you have to show not only either Strickland prejudice, you also have to show procedural default prejudice. And as Ambrose described it, that means you have to show that the result of the outcome would have been different. That's the key language, would have been different. And here it cannot be said that if the petitioner's mother and brother had observed the two-hour voir dire, the result of the seven-day jury trial would have been different. You just can't say that with a straight face, quite honestly. And the district court. We assume that defense counsel knew his client's family, so he'd know that, well, what happened to the mother and the brother, your opponent suggested that's too much of an assumption. I don't know, to be honest. I mean, it's very common for defense counsel to meet with his client and the family members before trial. That's very routine, but I don't know for sure it happened here. But surely he's in a better position to know than the judge, without a doubt. And once again, the defendant himself could have tapped his lawyer on the shoulder and said, hey, my mom and brother didn't come back in, because he knew them. Now, it's really my position that there was no closure here, no court-ordered closure, because the judge said members of the public will be allowed back in, space permitting. And once again, in Waller and Presley, the judge made an actual order, no, public's not allowed. And that did not happen here. And so, therefore, under ed pedeference, I would ask this court to affirm the district court's decision to deny habeas relief. Okay. Thank you, counsel. Thank you, Your Honor. Thank you. So on the so-called rogue deputy theory, that's contrary to the position that the state took below in the state court. They agreed that if there was a timely objection, that this closure was attributable to the court. They placed all their emphasis on whether there was a timely objection. Okay. The Michigan Court of Appeals didn't even address whether this was rogue. The Michigan Court of Appeals assumed, for purposes of this analysis, that the judge was directly responsible for this closure. In fact, the record, I think, as Judge White laid out, supports that. This was an ongoing policy. And I think the judge herself said as much, because even before she said, I'm not closing the courtroom. I'm going to let people back in. But when he brought it up after Vladir, she said, well, guess what? There's an additional requirement. You had to make an additional request. Not just to my deputies, which happened, but to me. And I refer to the court to page ID 752 where she said that. She said, even though I said before I was going to reopen the courtroom, now she's saying you had to make additional requests. The state agreed. I think what she's saying, because I've been in similar situations, is bring it to my attention because, look, the courtroom's open. If someone's not being let in, bring it to my attention. I will remedy it immediately. You can't bring it to the judge's attention after the fact. Trial is controlled chaos. You know that and I know that. The judge is focused on 100 things. And all Michigan's saying is, look, you want this to take effect, bring it to the judge in a timely fashion. And I empathize with the trial judge here who's trying to do 100 things and has made, as your opponent points out, the correct legal ruling. I agree with Judge White that it's problematic to me that these people are doing this. And I struggle with, well, can a judge make a proper ruling and then their agents not enforce that ruling? Who's to blame? I agree with Judge White. That's a problem. But I understand the contemporaneous objection rule. I mean. Right. Okay, that gets back to the stipulation. And you hit right on. The judge has 100 things to do, so does the defense counsel. And when defense counsel was told. The defense counsel's the one who wants these people and who knows these people. There's no way the judge is going to know who these people are. Defense counsel was told by the judge in no uncertain terms, and the state agreed with this in state court, I will reopen the courtroom. The defense counsel relied on that. The state agreed the defense counsel relied on it. Given the realities of trial when you're picking a. . . Before your time runs out, can you address one more argument that the state made at the end, which is if we review it and we get to the point where we're seeing if there's harm. Right. What's the harm? We don't. That's where contrary to comes in because Presley and subsequently Weaver says it's structural error. If there's not a basis to close the courtroom. I think the deference. . . We made the argument that even under structural error, we review it for harm. Not in this context. Not in this context because it doesn't lend. . . The federal jurisprudence does not lend itself to a harm. The only way that you get to a harm analysis is under the state procedural rules. And if you do epideference, if you look at that, then it's not there. And I don't think that that's not a merits-based. . . Had the court gone into. . . Your argument is, just because your time's out, your argument is structural error in this context, you don't get to a harm analysis. We don't have to show it. We win. Particularly because there was no procedural default because there was not an adequate and independent state grounds. Okay. Thank you very much, counsel. Any other questions? Judge White, I'm sorry. No, thank you. Okay. Thank you, counsel. Do you want a break or do you want to keep going? Counsel, with your indulgence, we're going to take a five-minute break and we'll reconvene at 10.05. Is that okay, Judge White?